IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANE ANTHONY LEWIS,

        Plaintiff,

    v.

ASHLEY CONWAY,

        Defendant.

Case No. 2:24-cv-00815-JR

**FINDINGS AND RECOMMENDATION**

**RUSSO, Magistrate Judge**

Plaintiff, an adult in custody ("AIC") at the Oregon State Penitentiary, brings this civil action as a self-represented litigant. Currently before the Court are defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 22) and plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 24). For the reasons that follow, defendant's motion should be granted in part and denied in part, and plaintiff's motion for leave to amend should be granted solely as to his First Amendment claim of retaliation.

## BACKGROUND

Plaintiff originally filed his Complaint in Malhuer County Circuit Court, and on May 16, 2024, defendant removed the case to this Court pursuant to 238 U.S.C. § 441(c). Defendant moved to dismiss plaintiff's original Complaint, but shortly thereafter plaintiff timely filed a motion for leave to amend pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure. The Court granted plaintiff's motion to file an amended complaint and, as a result, found moot defendant's motion to dismiss the original complaint. Defendant then filed her Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 22), and shortly thereafter plaintiff filed a Motion for Leave to File Second Amended Complaint (ECF No. 24).

Plaintiff's First Amended Complaint is not a model of clarity. The factual allegations span some 16 pages and describe intertwined incidents over a nearly two-year period of time which form the basis for his various legal claims. Following this extended recitation, plaintiff alleges defendant breached her employment contract with the Oregon Department of Corrections ("ODOC") by failing to follow various ODOC regulations, that she violated provisions of the Oregon Constitution, and that she committed two federal constitutional violations against plaintiff: (1) defendant retaliated against plaintiff for filing grievances and complaints against her in violation of his rights under the First and Fourteenth Amendments, and (2) defendant conducted unreasonable searches of plaintiff's legal materials in violation of his Fourth Amendment rights.

Plaintiff's retaliation claims arise from a series of interactions between plaintiff and defendant over the time period covered in the Amended Complaint, described in brief as follows. Plaintiff first alleges that he filed a grievance against defendant in January 2022 regarding a cell-in order issued by defendant. Plaintiff alleges that thereafter, in August 2022, defendant refused to schedule a court appearance for plaintiff. As a result, plaintiff sent a kyte to defendant's supervisor Amy Wray. Plaintiff alleges that the next time he encountered defendant, she told him he should not have sent the kyte and that he was not to complain to Salem about any issues. Thereafter, plaintiff alleges, defendant retaliated against him for complaining to Ms. Wray by "putting false and negative log notes about plaintiff in DOC's computer system."

Months later, and following other interactions between the two, on February 6, 2023, plaintiff was scheduled for day two of his state post-conviction relief trial in Malheur County Circuit Court in which he was representing himself and appearing via video from the institution. Plaintiff alleges that, upon his approach to the remote trial video location, defendant stopped

2 – FINDINGS AND RECOMMENDATION

plaintiff and began searching his cart of legal materials for contraband.  Plaintiff alleges that, once the day of trial concluded, defendant again searched plaintiff's materials for contraband. While plaintiff was appearing in court that day, defendant allegedly wrote a misconduct report that plaintiff alleges falsely accused him of committing the misconduct of Disrespect I.  The misconduct report was later dismissed by a hearings officer.  Plaintiff then initiated institution grievances against defendant which he alleges resulted in defendant being investigated for misconduct.

Plaintiff alleges that on November 14, 2023, he sent a kyte asking defendant to ensure that plaintiff was on the schedule for an upcoming court hearing.  He alleges that the kyte resulted in defendant once again taking undue disciplinary action based on false allegations of misconduct.

Plaintiff's state law contract claims allege defendant, by the actions described above, violated ODOC's "Code of Ethics," in violation of her employment contract with ODOC. Plaintiff also alleges defendant violated the Oregon Constitution's prohibition against retaliation. By way of remedy, plaintiff seeks declaratory and injunctive relief, as well as money damages.

Defendant moves to dismiss plaintiff's First Amendment Complaint.  First, defendant contends that plaintiff lacks standing to assert a breach of contract because he is not a party to defendant's employment contract with ODOC and that, in any event, Oregon law prohibits a claim of noneconomic damages by an adult in custody against a public body unless the adult in custody has also suffered economic damages.  As to plaintiff's claim of retaliation under the Oregon Constitution, defendant argues that a plaintiff cannot sue for damages based on an alleged violation of the Oregon Constitution.

3 – FINDINGS AND RECOMMENDATION

Regarding plaintiff's federal constitutional claims, defendant argues that plaintiff fails to state a claim for retaliation upon which relief may be granted, that plaintiff's unlawful search claim fails because the Fourth Amendment does not protect against the search of his materials, and that plaintiff does not allege facts establishing that the search of his materials deprived him of access to the courts. Finally, defendant contends she is entitled to qualified immunity on plaintiff's Fourth Amendment illegal search claims.

As noted, plaintiff seeks leave to file a Second Amended Complaint. The proposed Second Amended expands on plaintiff's breach of contract claims and adds additional detail to plaintiff's illegal search and retaliation claims.

## LEGAL STANDARDS

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, in many circumstances, instructs the pro se litigant regarding deficiencies in the complaint and grants leave to amend. *Eldridge v.*

*Block*, 832 F.2d 1132, 1136 (9th Cir. 1987).  A pro se plaintiff's claims may nonetheless be dismissed with prejudice where it appears beyond doubt the plaintiff can prove no set of facts that would entitle him or her to relief.  *Barrett v. Belleque*, 544 F.3d 1060, 1061–62 (9th Cir. 2008).

## DISCUSSION

### I.    State Law Breach of Contract Claims

Plaintiff alleges defendant is required to follow a Code of Ethics as a condition of her employment with ODOC, that she violated that Code of Ethics which amounts to a breach of her contract of employment, and that plaintiff is entitled to damages because he is "an intended beneficiary" of the contract of employment.  Plaintiff does not, however, allege facts establishing that ODOC intended for AICs to be able to sue ODOC employees if they violate the ODOC Code of Ethics.

First, a separate aspirational "Code of Ethics" or company policy is generally not an "employment contract."  In *Ewalt v. Coos-Curry Elec. Co-op*, 202 Or. App. 257 (2005), the Oregon Court of Appeals rejected an employee's argument that a code of ethics or code of conduct alters the nature of the employee's at-will employment.  There, the plaintiff argued that an at-will employment agreement had been superseded by an employer "Policy Bulletin" which described certain work rules to be enforced by supervisors.  The court rejected this argument and explained that the bulletin contained "guidelines and not absolute rules."  *Id*. at 261.  Other jurisdictions have also specifically found that aspirational codes of ethics do not create legally binding contracts.   *In re Banco Bradesco S.A. Sec. Litig.*, 277 F.Supp.3d 600, 658 (S.D.N.Y. 2017) ("Because a code of ethics is inherently aspirational, it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt

the code at all.  As is typically the case, the Company's Code made no guarantee that it would be followed, nor did it contain any representations of historical fact to the effect that its officers had uniformly abided by it.") (internal citation omitted).

More importantly, even if the ODOC aspirational code of ethics is the same as an employment contract or can be incorporated into an alleged "contract," plaintiff does not allege facts establishing that he is a third-party beneficiary of that contract.  Under Oregon law, a third-party creditor beneficiary may enforce a contract upon showing that the promisor's performance satisfies an actual or asserted duty of the promisee to the plaintiff.  *Sisters of St. Joseph v. Russell*, 867 P.2d 1377, 1380 (Or. 1994).  If the third party has paid no value, as plaintiff has not done here, and there is no intention to confer a contract right on that party, then the party is an incidental beneficiary who is not entitled to an action on the contract.  *Huan v. Claussen*, 147 Or. App. 330, 333 (1997).

Plaintiff makes conclusory allegations that ODOC and defendant, through defendant's employment contract, intended to confer a benefit to him simply because defendant is required under that contract to follow ODOC rules.  These allegations, however, are not sufficient to establish plaintiff's status as a third-party beneficiary to the contract.  *See Blalock v. Corely*, No. 3:24-cv-0647, 2024 WL 4043838, at *11 (M.D. Penn. Sept. 4, 2024) (AIC who alleged DOC officials violated the department's "code of ethics" failed to state a plausible breach of contract claim where AIC failed to plausibly allege that he was a party to the employment contract or an intended third-party beneficiary of the employment contract); *Butler v. Kauffman*, No. 4:19-cv-02171, 2022 WL 2977337, at *11 (M.D. Penn. July 27, 2022) (finding that prisoner-plaintiffs were not parties to DOC's Code of Ethics and therefore could not assert a breach of contract

claim against prison officials based on alleged breach of that document), *aff'd*, 2024 WL 1007444 (3rd Cir. 2024).

Finally, plaintiff has not alleged facts establishing that he is a donee beneficiary under Oregon contract law. A donee beneficiary exists where performance of a promise in a contract will benefit a person other than the promisee. However, that must appear from the terms of the promise so that the purpose of the promise is to make a gift to the beneficiary or to confer upon the beneficiary a right against the promissor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary. *Aetna Casualty & Surety Co. v. OHSU*, 96 Or. App. 292, 296 (1989), *aff'd* 310 Or. 61 (1990). Stated differently, the contract must be "so expressed as to give the promissor reason to know that such a benefit is contemplated by the promisee as one of the motivating causes of the promisee making the contract." 9 Corbin on Contracts § 776 at p. 16 (1993). Here, plaintiff does not allege facts plausibly establishing that ODOC intended to confer any gift upon plaintiff by asking defendant to sign and abide by the ODOC Code of Ethics. For these reasons, plaintiff fails to state a breach of contract claim against defendant upon which relief may be granted.

## II.    State Constitutional Claims

Plaintiff alleges defendant violated Article I, Section 8, of the Oregon Constitution when she retaliated against him for engaging in constitutionally protected speech. The Oregon Supreme Court has determined that "a private right of action for damages against a municipality or its employees does not exist directly under the Oregon Constitution, but is limited to common-law, equitable, and statutory remedies." *Barcik v. Kubiaczyk*, 321 Or. 174, 190 (1995) (citing *Hunter v. City of Eugene*, 309 Or. 298, 304 (1990)). This rule has been applied to public bodies other than municipalities. *Id.*; *Juran v. Independence Oregon Central Sch. Dist.*, 898 F.Supp.

728, 730 (D. Or. 1995). Instead, "the appropriate remedy for constitutional violations by public

bodies, officers, employees, and agents is the Oregon Tort Claims Act, ORS 30.260-30.300."

*Juran*, 898 F.Supp. at 730. Under the Oregon Tort Claims Act the State of Oregon is the only

proper defendant, and under the Eleventh Amendment to the United States Constitution, the

State of Oregon is immune from suit in federal court. *See Ronwin v. Shapiro*, 657 F.2d 1071,

1073 (9th Cir. 1981) ("The eleventh amendment bars suits in federal courts by private citizens

against a state. Where the state is in fact the real party in interest this bar cannot be

circumvented by naming an individual state official or state agency as a nominal defendant.");

*see also Estate of Pond v. Oregon*, 322 F.Supp.2d 1161, 1165 (D. Or. 2004) (Oregon Tort

Claims Act "does not waive the State of Oregon's Eleventh Amendment immunity to suit in

federal court"). Accordingly, plaintiff does not state a claim upon which relief may be granted

for defendant's alleged violation of the Oregon Constitution.

## III.    Federal Constitutional Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

(1) that a right secured by the Constitution or laws of the United States was violated, and (2) the

alleged violation was committed by a person acting under the color of state law. See *West v.

Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also allege that he suffered a specific injury as a

result of a particular defendant's conduct and an affirmative link between the injury and the

violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v.

Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A.    Fourth Amendment Illegal Search and Seizure

Plaintiff alleges that defendant violated his Fourth Amendment right against unreasonable

search and seizure by reading his legal materials in his presence before and after his remote

video post-conviction hearing.  The Fourth Amendment, however, does not protect inmates from

searches of their mail, including legal materials, because inmates generally have no reasonable

expectation of privacy in such materials.  *See Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir.

1996) (finding no Fourth Amendment violation when inmate not present during search of legal

materials, as inmates have no reasonable expectation of privacy in their cell or possessions

within it).

      Instead, such conduct may, if anything, raise an issue under the First Amendment, rather

than the Fourth Amendment.  *See Tran v. Webb*, No. ED CV22-01469-MCS (DFM), 2022 WL

19076662, at *6 (C.D. Cal. Dec. 14, 2022) ("Although Plaintiff may assert a claim under the

First Amendment based on alleged tampering with his legal mail without him present, he cannot

properly assert a claim under the Fourth Amendment based on the same conduct."); *Lund v.

CDCR*, No. ED CV21-1083-JBG (KKx), 2022 WL 3012219, at *6 (C.D. Cal. June 2, 2022)

(dismissing Fourth Amendment claim based on unreasonable seizure of legal mail because

plaintiff could not assert a right against unreasonable seizure of his property in prison context);

*Johnson v. Noack*, No. 3:16-cv-00443-SB, 2018 WL 3340876, at *10 (D. Or. July 6, 2018)

("Plaintiff also alleges that he caught [defendant] Alves reading his legal work."  Such conduct

raises an issue under the First Amendment rather than the Fourth Amendment) (internal citation

omitted).

      Plaintiff concedes he is not alleging a denial of access to the courts claim under the First

Amendment.  To do so, plaintiff would be required to show an actual injury, which he has not

done.  *See Lewis v. Casey*, 518 U.S. 343, 350-55 (a plaintiff alleging a denial of access claim

must demonstrate how the alleged shortcomings hindered his efforts to pursue a legal claim).

Indeed, as plaintiff alleges, the fact that defendant allegedly searched and read his legal materials

did not hinder his participation in his PCR trial.  As such, plaintiff does not state a plausible

claim of violation of his Fourth Amendment rights upon which relief may be granted.

> **B.    Fourteenth Amendment Due Process**

Plaintiff alleges the search of his legal property also violated his due process rights under

the Fourteenth Amendment because the search was not allowable under ODOC regulations.

Notably, plaintiff does not allege that he was deprived of any property, only that the property

was searched and viewed.  This is not sufficient to state a procedural due process claim under the

Fourteenth Amendment.

Generally, the "requirements of procedural due process apply only to the deprivation of

interests encompassed by the Fourteenth Amendment's protection of liberty and property."

*Burnsworth v. Gunderson*, 179 F.3d 771, 774 (9th Cir. 1999).  In *Sandin v. Conner*, 515 U.S. 472

(1995), the Supreme Court "refocused the test for determining the existence of a liberty interest

away from the wording of prison regulations and toward an examination of the hardship caused

by the prison's challenged action relative to 'the basic conditions' of life as a prisoner."  *Mitchell*

*v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (quoting *Sandin*, 515 U.S. at 480).  The Court in

*Sandin* reformulated the working definition of a liberty interest in the prison context "to include

only 'freedom from restraint which . . . imposes atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life.'"  *Mitchell*, 75 F.3d at 522 (quoting *Sandin*,

515 U.S. at 484).  The inspection of legal papers, even if done in violation of prison regulations,

"is simply not a dramatic departure from the basic conditions of [a prisoner's] incarceration."

*Mitchell*, 75 F.3d at 523; *see also Courtney v. Bachman*, No. EDCV 11-1474 CAS FFM, 2014

WL 1577774, at *4 (C.D. Cal. Apr. 21, 2014) ("[A] warrantless search of Plaintiff's cell and

legal materials would not violate the Constitution, even if it violated Jail policy.")

Even if defendant had actually confiscated plaintiff's legal property, plaintiff could not establish a due process violation. The "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). In addition, "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Oregon provides an adequate post-deprivation remedy in the form of the Oregon Tort Claims Act, Or. Rev. Stat. §§ 30.260 *et seq*. *Osborne v. Williams*, 444 Fed.App'x 153, 154-55 (9th Cir. 2011). Accordingly, plaintiff does not state a due process claim under the Fourteenth Amendment upon which relief may be granted.

### C.     First Amendment Retaliation

Finally, plaintiff alleges defendant violated his First Amendment right to be free from retaliation. In the prison context, a claim for retaliation in violation of the First Amendment has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must allege facts establishing that the defendant took some adverse action against the plaintiff. *Id*. at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *see also Brodheim*, 594 F.3d at 1270 ("[T]he mere threat of harm can be an adverse action[.]")

Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is

sufficient to survive dismissal. *Pratt*, 65 F.3d at 808. "[T]iming can properly be considered as circumstantial evidence of retaliatory intent," although timing alone is not enough to support a finding of retaliation. *Id*.; *see also Quiroz v. Horel*, 85 F.Supp.3d 1115, 1127 (N.D. Cal. 2016) (circumstantial evidence of timing, without more, is insufficient).

Fourth, the plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" that is "more than minimal." *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from bringing suit against the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id*. at 469.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution[.]" *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were "unnecessary to the maintenance and order in the institution." *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).

Defendant moves to dismiss the retaliation claims contained in plaintiff's First Amended Complaint, contending that plaintiff failed to plead a sufficient causal connection between his protected activity and the alleged adverse action and, as such, his claim fails as a matter of law as to the third element. Defendant asserts that plaintiff alleges he filed a grievance against defendant in or around January 2022, and claims defendant later retaliated against him for that action in or around August of 2022 and again in February of 2023. Defendant argues that even the shortest of these time periods (eight-months), is too long as a matter of law to establish

retaliatory intent. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (affirming

dismissal after plaintiff alleged that retaliation occurred "six or seven months" after protected

speech; to accept plaintiff's argument "would be to engage in the logical fallacy of post hoc, ergo

propter hoc, literally, 'after this, therefore because of this.'"); *Torres v. Gipson*, No. 1:16-cv-

1525-JLT (PC), 2021 WL 367833, at *6 (E.D. Cal. Feb. 3, 2021) (alleged retaliation occurring

four and half months after protected conduct was too distant), *adopted* 2021 WL 4925520 (E.D.

Cal. Oct. 21, 2021); *Woodson v. Rodriguez*, No. C 07-04925 CW (PR), 2009 WL 799403, at *4

(N.D. Cal. March 24, 2009) (retaliation claim insufficient where alleged retaliatory transfer

occurred nine months after protected conduct).

In his response to defendant's motion, plaintiff contends defendant misconstrued his

retaliation claim, which he argues was not based solely on the January 2022 grievance, and

which he instead describes as follows:

> First, . . . plaintiff claims that defendant Conway began covertly retaliating against him for trying to access the courts after he sent a kyte to management-level staff complaining about defendant Conway's refusal to schedule him to attend a court appearance in or around August of 2022. Then plaintiff explains how defendant Conway again retaliated against him in February 2023 for trying to meaningfully access the courts when he brought legal materials to his post-conviction relief trial, in which he was representing himself. Finally, plaintiff alleges that defendant Conway once more retaliated against him in November 2023 for trying to access the courts by sending her a kyte to ensure she had scheduled him to attend another court hearing, and for filing grievances and complaints resulting in defendant Conway being investigated by prison administrators. . . .

> Plaintiff's allegations are, therefore, sufficient to put defendant Conway on notice that plaintiff is claiming that she repeatedly violated the First and Fourteenth Amendments to the US Constitution between August 2022 and November 2023 by retaliating against plaintiff for (1) trying to meaningfully access the courts, and (2) filing written complaints and grievances against defendant Conway between August 2022 and November 2023.

Plaintiff's Response (ECF No. 26), p. 12 (internal citations to the record omitted).

13 – FINDINGS AND RECOMMENDATION

As noted above, plaintiff's First Amended Complaint is not a model of clarity. It is apparent, however, that his retaliation claim is more nuanced than described in defendant's motion to dismiss; plaintiff alleges facts spanning numerous interactions with defendant and identifies more than one occasion upon which defendant acted against plaintiff that appeared to be in direct response to plaintiff's assertion of his First Amendment rights. Moreover, plaintiff's proposed Second Amended Complaint further elaborates on the facts underlying his retaliation claim. Based upon the facts alleged in his First Amended Complaint, as clarified in his proposed Second Amended Complaint, plaintiff has put forth sufficient allegations of a claim for relief for retaliation which is plausible on its face. Accordingly, defendant's Motion to Dismiss should be denied as to plaintiff's retaliation claim.

## RECOMMENDATION

For the foregoing reasons, defendant's Motion to Dismiss (ECF No. 22) should be GRANTED IN PART and DENIED IN PART. Specifically, defendant's Motion to Dismiss should be granted as to plaintiff's state law contract claims, state constitutional claims, and federal claims for violation of plaintiff's Fourth Amendment illegal search and seizure and Fourteenth Amendment due process claims. Defendant's motion should be denied, however, as to plaintiff's First Amendment claim of retaliation. Further, plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 24) should be GRANTED to the extent plaintiff is allowed leave to file a Second Amended Complaint alleging *only* a First Amendment retaliation claim against defendant. Plaintiff cannot cure deficiencies relating to his remaining claims, therefore leave to amend as to those claims should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgement or appealable order.

The parties shall have fourteen (14) days from the date of service of a copy of this

recommendation within which to file specific written objections with the court. Thereafter, the

parties shall have fourteen (14) days within which to file a response to the objections. Failure to

timely file objections to any factual determination of the Magistrate Judge will be considered as

a waiver of the party's right to de novo consideration of the factual issues and will constitute a

waiver of a party's right to appellate review of the findings of the fact in an order or judgement

entered pursuant to this recommendation.

DATED this ___1st___ day May  2025.


/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge